[Cite as *State v. Mays*, 2011-Ohio-2684.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                          :

    Plaintiff-Appellee                 :          C.A. CASE NO.    23986

v.                                     :          T.C. NO.    09CR3105

TAVION L. MAYS                         :          (Criminal appeal from
                                                Common Pleas Court)

       Defendant-Appellant            :

 

                                           :

. . . . . . . . . .

# **O P I N I O N**

Rendered on the ___3rd___ day of ___June___, 2011.

. . . . . . . . . .

ANDREW T. FRENCH, Atty. Reg. No. 0069384, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

JASON E. TREHERNE, Atty. Reg. No. 0074141, 212 W. National Road, P. O. Box 175, Englewood, Ohio 45322
      Attorney for Defendant-Appellant

. . . . . . . . . .

DONOVAN, J.

{¶ 1} Defendant-appellant Tavion L. Mays appeals from his conviction and sentence for one count of having a weapon while under disability, in violation of R.C. 2923.13(A)(2), a felony of the third degree. Mays filed a timely notice of appeal with this

Court on April 14, 2010.

I

{¶ 2} The incident which forms the basis of the instant appeal occurred on September 11, 2009, when Detective Patrick O'Connell obtained a warrant to search Mays' apartment located at 4383 Spring Creek Dr., Apt. C, in Harrison Township, Montgomery County, Ohio. In order to obtain the warrant, Det. O'Connell presented a judge of the Montgomery County Court of Common Pleas with his affidavit which contained his own statements and information obtained from an individual named Donovan Hirst who lived in the apartment next door to Mays. Significantly, Hirst indicated to Det. O'Connell that he had personal knowledge that there were firearms in the apartment where Mays resided. In addition to his affidavit, Det. O'Connell provided the judge with oral, unrecorded statements regarding Mays' suspected possession of firearms which were not incorporated into the written affidavit. The judge subsequently signed and approved the search warrant. Pursuant to the warrant, Det. O'Connell searched Mays' apartment wherein he located a handgun and ammunition found hidden in an air vent.

{¶ 3} On September 29, 2009, Mays was indicted on one count of having a weapon while under disability.[1] At his arraignment on October 1, 2009, Mays stood mute, and the trial court entered a plea of not guilty on his behalf.

{¶ 4} Mays filed a motion to suppress on October 19, 2009. On January 5, 2010, a hearing was held on said motion before the trial court. In a written decision filed on

---

[1] The prior offense which served as the basis for Mays' disability to possess firearms was a conviction on January 8, 2009 for complicity to commit aggravated robbery, in Case No. 2007 CR 4753 in Montgomery County, Ohio.

January 21, 2010, the trial court overruled Mays' motion to suppress. On March 16, 2010, Mays plead no contest to one count of having a weapon while under disability. The court accepted Mays' plea and found him guilty of the charged offense. Mays was sentenced to three years in prison which the court ordered to be served consecutively to sentences in two separate probation revocation cases, for an aggregate sentence of nine years.

{¶ 5} It is from this decision that Mays now appeals.

II

{¶ 6} Because Mays' first and second assignments of error are interrelated, they will be discussed together as follows:

{¶ 7} "THE SEARCH WARRANT AFFIDAVIT FAILED TO JUSTIFY A FINDING OF PROBABLE CAUSE BECAUSE IT RELIED ON STALE INFORMATION."

{¶ 8} "EVIDENCE BEYOND THE FOUR CORNERS OF THE SEARCH WARRANT AFFIDAVIT WAS IMPROPERLY ISSUED TO OBTAIN AND UPHOLD THE SEARCH WARRANT."

{¶ 9} In his first and second assignments, Mays contends that the trial court erred when it overruled his motion to suppress the evidence that was discovered pursuant to the search warrant executed on September 11, 2009. Specifically, Mays argues that there was insufficient probable cause upon which to issue the search warrant for his apartment because the affidavit in support of the warrant was based on "stale" information. Additionally, Mays argues that the judge who issued the search warrant did not confine her consideration to the four corners of the affidavit, but rather improperly considered information that was provided by Det. O'Connell which was not recorded or made part of the affidavit.

{¶ 10} Initially, we must note that "appellate courts give great deference to the factual findings of the trier of facts. At a suppression hearing, the trial court serves as the trier of fact, and must judge the credibility of witnesses and the weight of the evidence. The trial court is in the best position to resolve questions of fact and evaluate witness credibility. In reviewing a trial court's decision on a motion to suppress, an appellate court accepts the trial court's factual findings, relies on the trial court's ability to assess the credibility of witnesses, and independently determines whether the trial court applied the proper legal standard to the facts as found. An appellate court is bound to accept the trial court's factual findings as long as they are supported by competent, credible evidence. (Internal citations omitted)." *State v. Purser*, Greene App. No. 2006 CA 14, 2007-Ohio-192.

{¶ 11} "The Fourth Amendment to the United States Constitution and Section 14, article 1 of the Ohio Constitution requires [sic] that a warrant only be issued if probable cause for the warrant is demonstrated through an oath or affidavit." *State v. Robinson*, Montgomery App. No. 20458, 2004-Ohio-5281.

{¶ 12} "In determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, '[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.' (*Illinois v. Gates* [1983], 462 U.S. 213, 238-239, 103 S.Ct. 2317, 76 L.Ed.2d 527 followed.)

{¶ 13} "In reviewing the sufficiency of probable cause in an affidavit submitted in

support of a search warrant issued by a magistrate, neither a trial court nor an appellate court should substitute its judgment for that of the magistrate by conducting a *de novo* determination as to whether the affidavit contains sufficient probable cause upon which that court would issue the search warrant. Rather, the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, trial and appellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant. Id.

{¶ 14} " '[I]t is clear that "only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause." ' " *State v. George* (1989), 45 Ohio St.3d 325*, 329.* "To establish probable cause to search a home, the facts must be sufficient to justify a conclusion that the property that is the subject of the search is probably on the premises to search. (Internal citation omitted). The nexus between the items sought and the place to be searched depends upon all of the circumstances of each individual case, including the type of crime and the nature of the evidence." *State v. Freeman*, Highland App. No. 06CA3, 2006-Ohio-5020.

{¶ 15} In the instant case, Mays directs us to the affidavit submitted to the judge by Det. O'Connell on September 11, 2009, which states in pertinent part:

{¶ 16} "On September 10, 2009, while conducting an investigation in reference to Aggravated Robbery and Murder, I responded to 4383 Springcreek Dr. Apt. C, Harrison Twp., Montgomery County, Ohio. While attempting to locate a person of interest, Tavion

L. Mays, I was contacted by Donovan J. Hirst. Mr. Hirst stated he knew the residents of the above address and he stated that he had information that may assist law enforcement. Mr. Hirst stated that Deputies should be careful if they enter the above apartment due to him seeing Tavion L. Mays in possession of three handguns. Mr. Hirst stated that on 18 August 2009 at approximately 2230 hrs., he was in his apartment located at 4283 Springcreek Dr. Apt. B, when he heard shots fired. Shortly thereafter, he was then contacted by Tavion L. Mays, who asked him to hide three handguns in his apartment due to [Montgomery County Sheriff's Office] response. Mr. Hirst stated that Tavion Mays showed him (1) black revolver .357 caliber, (1) silver semi-automatic handgun, and (1) black revolver. Mr. Hirst further stated that Tavion Mays told him he hides his loaded weapons inside air vents located inside 4383 Springcreek Dr. Apt. C.

{¶ 17} "Mr. Hirst stated that he refused to hide the weapons. Mr. Hirst stated that since August 18, 2009 he has seen and heard shots fired at the rear of 4383 Springcreek Dr. Apt. C. Mr. Hirst viewed a photo of Tavion Mays and confirmed that he saw him in possession of the previously described firearms.

{¶ 18} "Tavion L. Mays has (1) prior conviction for ORC 2911.01 Aggravated Robbery F1 (case 2007 CR04753) in Montgomery County Common Pleas.

{¶ 19} "Mays was placed on community control for (5) years; as a result of his conviction Mays is forbidden to possess or own any firearms/dangerous ordinance.

{¶ 20} "The Affiant is requesting the collection of evidence located within 4383 Springcreek Dr., Apartment C, Harrison Township, Montgomery, Ohio, 45405."

**A. Staleness of Information in Affidavit**

{¶ 21} An affidavit in support of a search warrant must present timely information and include facts so closely related to the time of issuing the warrant as to justify a finding of probable cause at that time. *State v. Jones* (1992), 72 Ohio App.3d 522, 526. No arbitrary time limit dictates when information becomes "stale." Id. The test is whether the alleged facts justify the conclusion that certain contraband remains on the premises to be searched. *State v. Floyd* (March 29, 1996), Darke App. No. 1389. If a substantial period of time has elapsed between the commission of the crime and the search, the affidavit must contain facts that would lead the judge to believe that the evidence or contraband are still on the premises before the judge may issue a warrant. *State v. Yanowitz* (1980), 67 Ohio App.2d 141, 147.

{¶ 22} "Ohio courts have identified a number of factors to consider in determining whether the information contained in an affidavit is stale, including the character of the crime, the criminal, the thing to be seized, as in whether it is perishable, the place to be searched, and whether the affidavit relates to a single isolated incident." *State v. Ingold*, Franklin App. No. 07AP-648, 2008-Ohio-2303.

{¶ 23} Upon review, we conclude that the judge who approved the search warrant "had a substantial basis for finding a fair probability" that the firearms identified in the warrant would be found in Mays' apartment. *State v. Smith*, Greene App. No. 2009-CA-81, 2010-Ohio-6229. In his affidavit in support of the search warrant, Det. O'Connell identified Mays as a person of interest in an aggravated robbery and murder. When he went to Mays' apartment on September 10, 2009, Det. O'Connell testified that he spoke with Donovan Hirst, an individual who lived in the apartment next to Mays. According to the information in the affidavit, Hirst informed Det. O'Connell that on the evening of August

18, 2009, he heard gunshots. Following the gunshots, Hirst stated that Mays asked him to hide three handguns in his apartment in order to avoid discovery by the police. Mays then showed Hirst three handguns. Mays also told Hirst that he hides the handguns inside air vents located in his apartment. Hirst told Det. O'Connell that he refused to hide the handguns for Mays and had heard additional gunshots fired from the rear of Mays' apartment since that date.

{¶ 24} Mays cites two cases in support of his argument that the information in the affidavit was stale, *State v. Gales* (2001), 143 Ohio App.3d 55, and *State v. Jones* (1991), 72 Ohio App.3d 522. Both cases, however, are distinguishable from the instant case. In *Gales*, the Eighth District Court of Appeals held that any probable cause resulting from the defendant's alleged admission to an informant that "he had some heroin" at his residence had grown stale when a search warrant for the residence was issued three months later. In *Jones*, the Sixth District Court of Appeals held that allegations of cocaine sales from defendant's residence did not establish the requisite degree of probable cause for the issuance of a search warrant after three months had elapsed. Additionally, the *Jones* court noted that the affidavit underlying the search warrant was totally devoid of facts linking the defendants to any alleged illegal activity.

{¶ 25} It is undisputed that approximately 23 days (not a substantial time period) had elapsed between the date Mays asked Hirst to hide the guns (August 18, 2009) and the date that Det. O'Connell obtained the warrant to search Mays' apartment (September 11, 2009). The information contained in the affidavit, however, was not stale because one of the crimes Mays was alleged to have committed (possession of firearms) was an ongoing

occurrence insofar as Hirst stated that he continued to hear gunshots from the rear of Mays' apartment after August 18, 2009. We also note that the affidavit stated with particularity the location in Mays' apartment to be searched, as well as the items to be seized which were firearms and not perishable items such as drugs, as in *Gales* and *Jones*. Furthermore, given Mays' disability as noted in the affidavit, any possession by him of a firearm constituted a crime. "[A] reasonable inference could be drawn that despite the passage of time, [Mays] would not have disposed of these items and that it was probable that they were still in his possession." *State v. Kirby* (Sept. 27, 1995), Montgomery App. No. 14971, citing *State v. Zinkiewicz* (1990), 67 Ohio App.3d 99, 103. Lastly, we note that the firearms had an "enduring quality" to Mays insofar as he asked Hirst to hide the guns for him ostensibly so that he could retrieve them at a later time. Accordingly, we find that the information contained in the affidavit was not stale and provided adequate probable cause for the judge to issue a warrant to search Mays' apartment.

**B. Four Corners of the Search Warrant Affidavit**

{¶ 26} In his second assignment, Mays argues that trial court failed to confine its consideration of whether probable cause existed for the issuance of the search warrant to the four corners of the affidavit. Rather, Mays asserts that the trial court improperly considered additional information that was provided by Det. O'Connell to the issuing judge, but which was not recorded or made part of the affidavit.

{¶ 27} Specifically, Det. O'Connell testified that he informed the issuing judge that he was aware that shortly before September 9, 2009, Mays had been captured on a surveillance camera at a gas station with what appeared to be a gun. Det. O'Connell also

testified that he informed the issuing judge that Mays had been seen at the apartment located at 4383 Spring Creek Dr., Apt. C, in Harrison Township multiple nights during the week. No reference to the existence of the video surveillance footage was made in the affidavit, nor was there any reference in the affidavit regarding the amount of time Mays spent at the apartment. Thus, Mays asserts that since evidence outside of the four corners of the affidavit was used to obtain the search warrant, the trial court violated Crim. R. 41(C), and its decision overruling the motion to suppress should be reversed.

{¶ 28} Crim. R. 41(C) states in pertinent part:

{¶ 29} "(1) A warrant shall issue on either an affidavit or affidavits sworn to before a judge of a court of record *** establishing the grounds for issuing the warrant. ***

{¶ 30} "(2) *** Before ruling on a request for a warrant, the judge may require the affiant to appear personally, and may examine under oath the affiant and any witnesses the affiant may produce. Such testimony shall be admissible at a hearing on a motion to suppress *if taken down by a court reporter or recording equipment, transcribed, and made part of the affidavit.*"

{¶ 31} Courts have generally held that "in determining whether probable cause exists to support the issuance of a search warrant, a trial court is confined to the four corners of the affidavit and any recorded testimony made part of the affidavit pursuant to Crim. R. 41(C)." *State v. O'Connor*, Butler App. No. CA2001-08-195, 2002-Ohio-4122. It is undisputed that Det. O'Connell provided the issuing judge with statements that were not made part of the record, nor were they incorporated into the affidavit before the search warrant was issued. The trial court's taking of this testimony at the suppression hearing was a violation of Crim.

R. 41(C), but there is nothing in the record which establishes that the court gave any weight to the extraneous statements. In fact, the trial court indicated several times during the hearing that it intended to limit its probable cause determination to the four corners of the affidavit. We also note that, in determining whether the good faith exception to the exclusionary rule applies, the court may look " 'beyond the four corners of the affidavit to determine whether the officer executing the search warrant did so in good faith reliance on the magistrate's issuance of the search warrant." *State v. Landis*, Butler App. No. CA2005-10-428, 2006-Ohio-3538." *State v. Dillard*, 173 Ohio App.3d 373, 2007-Ohio-5651, ¶45.

{¶ 32} In any case, we have found that the information in the affidavit from Det. O'Connell was not stale and provided adequate probable cause for the judge to issue a warrant to search Mays' apartment. In so doing, we confined our consideration to the evidence submitted and incorporated by Det. O'Connell into the four corners of the affidavit. Consideration, if any, by the trial court of the unrecorded extraneous information is harmless and has no effect upon our conclusion that the trial court properly found that the information within the four corners of the affidavit provided sufficient probable cause upon which to issue the search warrant.

{¶ 33} Mays' first and second assignments of error are overruled.

III

{¶ 34} Mays' third and final assignment of error is as follows:

{¶ 35} "TAVION MAYS WAS PREJUDICED BY THE INEFFECTIVE

ASSISTANCE OF TRIAL COUNSEL."

{¶ 36} In his final assignment, Mays argues that his attorney provided ineffective assistance of counsel during the hearing on the motion to suppress. Specifically, Mays contends that his counsel was deficient for the following reasons: 1) failing to argue that the information in the affidavit presented by Det. O'Connell was stale; 2) failing to object to the testimony at the suppression hearing adduced by the State regarding information outside the four corners of the affidavit; and 3) because defense counsel's cross-examination of Det. O'Connell tended to bolster, rather than attack, the credibility of the informant, Donovan Hirst.

{¶ 37} "In order to demonstrate ineffective assistance of counsel, [Mays] must establish that his counsel's representation fell below an objective standard of reasonableness and that he has been prejudiced by his counsel's deficient performance. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 * * * . 'Reversal of a conviction for ineffective assistance of counsel "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." ' (Internal citations omitted). Moreover, '[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'

{¶ 38} "Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. (Internal citations omitted). Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's

perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel." *State v. Moffo*, Greene App. No. 2005 CA 131, 2006-Ohio-5764.

**A. Staleness**

{¶ 39} Initially, Mays argues that his counsel was ineffective for failing to raise the issue of the staleness of the information contained in the affidavit in the written motion to suppress or during the hearing. However, as we have previously found, the information incorporated into the affidavit in support of the search warrant was not stale. Rather, the information in the affidavit established a "fair probability" that firearms would be discovered in Mays' apartment.

{¶ 40} Given the strong presumption that counsel's performance constituted reasonable assistance, Mays' counsel was not required to perform a futile act. *State v. Lodge*, Montgomery App. No. 2004 CA 43, 2005-Ohio-1908. Moreover, Mays has failed to demonstrate that there is a reasonable probability that but for his counsel's failure to address the staleness issue, the result of the case would have been different.

**B. Failure to Object**

{¶ 41} Mays next asserts that his trial counsel was deficient for failing to object to the introduction of evidence presented to the issuing judge that was outside the four corners of the affidavit. The record of the suppression hearing, however, establishes that Mays' counsel did, indeed, ask the court to disregard the testimony of Det. O'Connell as it related to evidence outside the four corners of the affidavit in the following exchange:

{¶ 42} "The State: The – the relevant question for consideration on the motion is

whether or not the information provided to the judge issuing the warrant is sufficient to establish probable cause. Whether or not this detective felt the information was credible or reliable is irrelevant. It's whether or not the information provided to, in this case, Judge Huffman, was sufficiently reliable to justify her issuing the warrant. That – that is why consideration of this motion is confined to the four corners of the affidavit and the information provided to the judge.

{¶ 43} "Defense Counsel: And, Your Honor, I think – and I take exception to that in the fact that [Det. O'Connell] just testified that he told the judge about surveillance and some other statements that aren't contained within the four corners of the affidavit. *So if he's going to expose himself to making statements and saying things to Judge Huffman that aren't contained in this four corners of the affidavit, I would ask the Court to throw it out*."

{¶ 44} In his closing argument, defense counsel made the following appeal to the trial court:

{¶ 45} "Defense Counsel: Your Honor, thank you for allowing me to get into some of those questions. But I have no further argument at this point in time. Although I would like to tell the Court that we did learn quite a bit that's not included within the affidavit. *So I think if we're going to look at the four corners of the document, I ask the Court to limit its review just to that.*"

{¶ 46} In light of the foregoing, it is clear that defense counsel was aware that evidence outside the four corners of the affidavit had been adduced and repeatedly urged the trial court to disregard the extraneous information. Accordingly, Mays' argument is without merit.

**C. Bolstering Informant's Credibility**

{¶ 47} Mays' final argument with respect to his assigned error of ineffective assistance of counsel is that his defense counsel bolstered, rather than attacked, the credibility of the informant by adducing testimony from Det. O'Connell that Hirst was the son of a police officer and his story was corroborated by his girlfriend who was present at the time that the detective was interviewing Hirst.

{¶ 48} Regarding the testimony that Hirst was the son of a police officer, Det. O'Connell testified that he did not become aware of that fact until after the search warrant had been executed. Simply put, Det. O'Connell was unaware that Hirst was a police officer's son at the time he presented his affidavit to the issuing judge in order to secure the search warrant. Because that information was unknown to Det. O'Connell when he initially met with the issuing judge, it could have had no effect on her decision to issue the search warrant.

{¶ 49} During cross-examination, defense counsel elicited testimony from Det. O'Connell that Hirst's story had been corroborated by his girlfriend who was present at the interview. When defense counsel inquired into why he did not incorporate the girlfriend's statements into the affidavit, Det. O'Connell testified in pertinent part:

{¶ 50} "Defense Counsel: Okay. Did anybody else corroborate any of the information given to – given to you to make [Hirst's] information more credible?

{¶ 51} "Det. O'Connell: Two portions of it, yes.

{¶ 52} "Q: Okay. And was that provided – was that information provided within the affidavit that you provided to the – that you presented to the Court?

{¶ 53} "A: No.

{¶ 54} "Q: And why wasn't that provided to the Court?

{¶ 55} "A: Because that information was corroborated while they were in the presence of each other. It was [Hirst] and then his girlfriend who – came into the room [sic] also said – affirmed what he said was true."

{¶ 56} Mays argues that an effective cross-examination, rather than adduce evidence of a corroborating witness, would have simply pointed out that the affidavit did not contain any information establishing that Hirst was credible or truthful. Mays' argument attempts to second-guess the decision of defense counsel to conduct cross-examination in the manner in which he saw fit. This type of tactical decision is not sufficient to warrant a reversal based upon ineffective assistance of counsel. *State v. Bradley* (1989), 42 Ohio St.3d 136. Additionally, Det. O'Connell testified that he did not provide the issuing judge with any information regarding the girlfriend's corroborating story because he did not think it was necessary. Det. O'Connell's testimony indicates that the issuing judge was unaware of this additional information when she signed off on the search warrant. Thus, Mays has failed to establish that, but for this testimony of Det. O'Connell, the trial court would have granted his motion to suppress.

{¶ 57} Mays' third and final assignment of error is overruled.

IV

{¶ 58} All of Mays' assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . .

FAIN, J. and KLINE, J., concur.

(Hon. Roger L. Kline, Fourth District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).

Copies mailed to:

Andrew T. French
Jason E. Treherne
Hon. Frances E. McGee